I'm going to Arulampalam. We have another case. I know, but I promised them, and we'd get them out of here by quarter after eleven because we moved them around. So we'll come back to yours. Good morning, Your Honor. It's on behalf of Mr. Velasquez. This case should really not even be before this panel. This case should have been, if the BIA had not streamlined its position, overturned the immigration judge's decision. The immigration judge's decision misstates the facts and misstates the law. My client was denied a basic education in Guatemala based on his race. He wasn't denied an education in Guatemala based on no bilingual program in that country, as alleged by the immigration judge, who knew that was an incorrect statement to make. This court has ruled since then, Corbelina and Guinoc, that non-government entities and individuals that deal in harassment, that deal in racist behavior, which is offensive, that individual that faces that harm and those threats and harassment qualifies for asylum. The judge was wrong to misstate the law that as there was no government action involved in this case, my client didn't qualify for asylum. On both those grounds, the BIA should have overturned the judge. But because it implemented a policy in 2002 not to read these cases but to streamline it and hopefully hope they'll disappear, we're here before you. It's very straightforward. My client was arrested coming into this country. He was a minor at 17. Entering Texas, he doesn't speak a word of Spanish, doesn't speak a word of English, cannot read or write. He is of Canjabal descent. The government of Guatemala, like the Nazi government, had a scorched earth policy, destroying, killing by the hundreds of thousands of indigenous people in Guatemala. What government? You said scorched earth policy? Like what government? Nazi Germany when it entered the Soviet Union, Your Honor. Basically, that was the policy of the Guatemalan government from the 1980s in selecting indigenous people in Guatemala. The Russians had the scorched earth policy. No, Your Honor, I'm saying... They used that with Napoleon. Okay. They used that with Charles XII. And they used that again. I'm sorry if I misstated a historical fact. That's what I think, but you know... What I was meaning by scorched earth policy was picking up on people and destroying their livelihood and their household. It isn't very useful to get into generality. The point of this, your basic point, which is that he testified to specific persecution and beatings by private individuals, and the IJ simply disregarded the fact that that could be a valid asylum claim is really your central point. Not only is that true, Your Honor, not only that, the judge tried to make it into an issue of cross-dressing and homosexuality when we went into the issue of tribal clothes. He says, well, you know, he's describing how his mother wears Chinese clothes and how wool is available. This is a 17-year-old who has two translators, who has no way of speaking or communicating with anybody. In a courtroom, he's in an expedited hearing. He has to speak in tangible, which is then translated to Spanish, which is then translated to English. He's a minor, had no chance before of any kind of education. His brother has fled. His other two brothers have fled. His brother has filed for asylum in the United States, denied also the same form of education in Guatemala. The formulation of a social group the judge was aware of. He used the brother as a conjugal interpreter because he didn't even have an interpreter present in court. I mean, this is blaring. I mean, from the get go. Which which part which part of what you just said is glaring something? Well, I'm talking of he had to have two translators, right? Yes. What's evil about that? There's nothing evil about that, Your Honor. What I'm saying was that seems to be the burden of what your last minute of conversation was about, that he's in the courtroom and there are two translators. And I asked the judge at that time if because my client couldn't understand the questions as he was a minor, if I could lead him. He said, no, we spent like pages and pages on the clothes he was wearing. And what was the point of these clothes? The point of these clothes was to show his tribal background, his tribal living like the untouchables in India. He was segregated. He was moved out of the town. He was placed in a separate area with his mother and sister. They weren't allowed to mix with the people in town. He was of a darker complexion. He was of a different race. What he calls the lighter skinned Spanish speaking people are Latinos. They would beat him. They would hit him. They would harass him. I mean, it goes on where like Corbelina, where, you know, harassment based on your race or your religion is offensive. And the government would not protect him. The government has a policy of just letting this occur. Specifically, we have two cases, apparently two instances of harassment when he was about six. And then we have two other instances. Correct. We have two events in 1997 of beatings. Right. Two, two when he was about six and then two beatings later on. At six, he was denied education. I like his brother. That is right. Yes, sir. Those two and then two. That's that's what was testified to. As well as there's a whole other claim of his imputed political opinion, which goes into his credibility. And that goes also back to the tangible and the two interpreters where there was a concept going back into the basis of my claim where the government views Indians or indigenous people in Guatemala as anti-government. They came looking for him. He made a allegation that he had family members that were killed, which he hadn't mentioned before. But he did state in his application and he did state in his oral testimony and he did state that the military came looking for him in January of 1998, which led him to flee. Right. He said they came looking for him because of his inability to speak Spanish. Right. That was that was his belief. Yes. His first reason. And then his his second reason was he speculated, well, maybe somebody in the village said that he was a guerrilla and that's why they came looking for him. Correct. Based on what had happened to his brothers. That is correct. I'm going to ask you, Your Honor, if I could keep the balance of my time for rebuttal. Thank you very much. Good morning. May it please the Court. Hillel Smith on behalf of the government. The record in this case does not compel a finding that Mr. Velazquez was persecuting Guatemala or, importantly, that the government condoned or was complicit in any difficulties that he had. Isn't there a problem, though, in the fact that the IJ simply did not address the government's ability to to prevent discrimination, harassment or beatings by private individuals because he said that the private they were just private individuals? That's no, it's not a problem because it's the petitioner's burden to establish that the government is unable or. There isn't some real indication that the IJ just wasn't understanding of the legal requirements. I'm sorry, I don't. The IJ has never made a ruling on that. He simply ignored the problem because he seemed to think there wasn't such a category. Right. But that that really is not the main focus here is whether or not this petitioner's submit provided evidence to compel a finding that he was persecuted or that he has well-found fear of future persecution. His first of all, allegations of discrimination do not support a legal basis for seeking asylum. It is well-established that private discrimination does not constitute persecution. There is no evidence in this case. It's well-established that private discrimination alone does not constitute persecution. But that's exactly what I was saying. Unless the government is unable or unwilling to control him. Right. And here. And that part is what the IJ never discussed. The immigration judge may or may not have discussed that. But the fact of the matter is, before the record here, the record is not. There's no evidence that the government participated or was complicit in any private. But the requirement isn't participated or complicit. That's not the requirement. The government is unable or unwilling to control. It has to be. The government has. The persecution alleged has to be from the government. Or you have to show that the government is unable or unwilling to protect. Right. That's different than complicit. Right. They're two different things. But you said complicit. Right. That's one of the things. All right. But the second one is unable or unwilling to control. And that issue has never been addressed in this case. Well, there is. But even so, there's still no evidence to show that the government is unable or unwilling to protect. Well, there is some at least general country conditions suggestion that the indigenous population problems were not being addressed by the government. Nevertheless, simple allegations of private discrimination do not compel a finding that one is persecuted. His allegations of physical assault likewise do not compel a finding of persecution. I'm not understanding what you're saying. Are you saying that the things that the private people did to him were not persecution? So even if the government wasn't unable or unwilling to control, it wouldn't matter? Are you saying that because they were private people, then it doesn't the statute doesn't apply? Which one are you saying? Well, are we talking about just the instance, one instance or two instances of discrimination or the assault? I'm talking about discrimination and of the assault. Discrimination alone is not persecution. All right. So let's leave that out. I'm talking about the alleged beating later on. There's even if one could show that that was government condoned or the government cannot protect. That's condoned. What does condoned have to do with it? That's not the statute. It says unable or unwilling to control. Unable. Well, okay. Okay. Then in that case, that those assaults do not compel a finding of persecution because there's no concrete evidence in the record that he was harmed because of his Indian ancestry or that his assent was even referred to as ethnicity. We do not know. We'd have to speculate why he was attacked. And that speculation does not compel a finding of that he was persecuted because of his race. Is that what the IJ said? Was that what the IJ said? I believe the IJ came to that conclusion. I thought the IJ said it was because it was by private people. It was by private people. I know. I understand that. But did the IJ find that it was not sufficient or did the IJ find that it was because it was by private people? I believe it was because it was by private people and it was not sufficient. There was not a sufficient nexus to one of the five statutory grounds. The fact of the matter is it was reasonable for the immigration judge to conclude that these were acts of private violence, which falls short of racial persecution. Well, you have this June 1997 country conditions. Weak or ineffective police, judiciary and public prosecutors greatly limit the government's ability to effectively prosecute accused criminals. The fact of the matter is, though, if that's the case, if an asylum applicant can demonstrate his asylum eligibility by pointing to a country's report and saying, well, the government cannot protect me regardless of the level of harm he received, even if it was a minor incident or just one or two isolated incidents, then anybody would be qualified for asylum. As lynching and mob attacks continued and the government wasn't able to prosecute the perpetrators. The fact that there is evidence that could support the asylum applicant's claim does not mean it compels. It says, noting that if the government is unable to control the elements of society committing the acts of persecution. Well, I think even if the court were to assume or to come to the conclusion that this Petitioner were able to establish past persecution, again, the court also has to focus based on the record of there's evidence of changed country conditions as well, and based on that evidence, the record doesn't compel finding that he would be persecuted. There's also no evidence to show that he would be persecuted by the military if he were to return. I know we have plenty of cases indicating that the fact that there were accords in Guatemala in 1996, and in particular, this particular State Department profile in 1997, is not sufficient to demonstrate changed country conditions in many instances. I mean, it was a very typical report. It certainly did not suggest that there were attempts being made to make things better, but it also suggested there were plenty of disturbing things still going on. Yes, but it does indicate that there have been peace accords between the military and the guerrillas. There's an improvement in human rights situation that might not be perfect. The guerrillas' organization was dissolved in 1997. The military conscription ended in 1994. Patrols were disbanded. This court in Kozlowskis noted that Department of State reports should be given great weight. And in this case, this goes to the heart of his claim, because he's claiming that he will be persecuted by the military. There is no evidence, though, in this record that he ever was persecuted by the military. His claim is simply based on something that I believe his mother told him, or his brother told him, and that's not sufficient to sustain his burden of proof. Is that what the IJ said? The immigration judge, I believe the immigration judge observed that. He didn't just believe that this thing happened. He didn't say it wasn't so. The immigration judge did have problems with credibility as far as His credibility was that he didn't believe it was because he did not speak or read Spanish, but I think he was simply misunderstanding what this young man, a young illiterate man was saying. He was saying it was because he was in a group. That's what he was saying. As far as the credibility, the problem was the petitioner did not indicate in his asylum application and I believe or in the declaration he indicated that he that the military had killed his uncle or cousin or something like that. And he did not bring that up in his testimony until redirect examination. And that was the problem. He did not indicate in his he did not indicate his application that the military was looking for him and that they killed his uncle and his cousin. Events presumably are central to his claim. And he brought that up only later on in testimony. What's disturbing to me in general is that you're arguing against the IJ's opinion. You're not accepting what arguments he did make, but you're arguing against them. He did not find that these threats were not made. And he in fact says more likely it appears that he was accused of being a guerrilla. And he so you're saying that it was a secondhand information. So it's not sufficient to me to say he's burned a proof. But that's not what the IJ found. He found that as far as this thing is concerned that this incident happened. He didn't believe that it happened because he didn't speak Spanish, but he thought it happened because he was accused of being a guerrilla. And that's where we are. There is there is no evidence in this record to come to that conclusion. There's no evidence. But he came to that conclusion. So now you're saying that the IJ you're you're now fighting the IJ's conclusion. The immigration judge had problems credibility problems. He had only one credibility problem with this thing, which is that he didn't believe it was because he didn't read or speak Spanish. He didn't have a credibility problem with the fact that it happened. Right. But that isn't that is something in the record. It's part of the record. What's part of the record? The issue is the fact that he did not indicate in his application that the military was looking for him and that they killed his uncle and his cousin. So you are arguing against the IJ's finding? No, but that is part of the record. And this part that's part of the record and this Court has to review the record. What the IJ said was that it appears it's more likely that he was allegedly accused of being a guerrilla. But that seems unlikely to correct. Right. Well, I see my time is up. So if this court has any other questions. Any questions? OK, thanks. Thank you. What is the O.I.L. mean? Office of Immigration. O.I.L. I just have a few minutes of rebuttal. I'd like to just say two things. Thank you very much. Number one, Judge Berzon is correct. The judge did find my client credible insofar as the incidents were concerned of what he classified as discrimination. He stated on transfer page 00082 that because it wasn't sanctioned by law or by the government, it did not rise to the level of persecution. And that itself was an erroneous application of the law. Now, counsel did mention one fact which I didn't address, and that was the peace accords. The court, the IJ didn't say because it doesn't rise to the level. The IJ said it is not sanctioned by the government, and then said the court does not believe that in and of itself does not rise to the level of persecution. It doesn't say it's because of that. It's just saying that these, he goes on and says the action by private individuals taken out on another do not necessarily do that. Because he was different. What he's saying is if a couple of times somebody beat you up on the street, you know, folks beat me up on the street a couple of times because of what I was, that doesn't mean I was being persecuted. That's what he said. That's not what I understood him saying. He was saying that discrimination does not qualify for persecution. He agrees that he was beaten because he was indigenous. He's stating he accepts that, but he believes that discrimination does not constitute persecution. That's his, that's an erroneous concept of the law. Because the government doesn't accept it. If you beat me up because of what I am, and I'm telling you that's happened. If you beat me up because of what I am, that does not mean I'm being persecuted. That means you're being beaten. A couple of people beat me up because of what I was. True. But that doesn't ifso facto become persecuted, and therefore I can go seek asylum somewhere, does it? If you were Jewish and you were beaten up in Kiev by some Ukrainian nationalists, if you were an indigenous Indian in Guatemala and you were beaten up because you were darker and you could not speak the language and you were told not to, yes, that is persecution, Your Honor. If you're just beaten up solely for the, frankly, I just want to, I only have 19 seconds. Counsel mentioned one issue, and that's the peace accord. The peace accord is a piece of paper that does not resolve the issue of a conflict of 100,000 people being killed in Guatemala. It's the political climate that can resolve that. And the political climate, as Judge Ferguson read from the report, and there are other reports, clearly indicate mob lynching, beatings, unindigenous people being killed, their land still being taken, so it can hardly be seen that it's a material change. And the standard in this circuit is not blanket statements from the State Department, but an individualized understanding and reading of the facts. Thank you very much.
judges: Pregerson, Fernandez, Berzon